**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| BEVERLY DIANE BLAND, | )   Case No. 06-1159 |
| | ) |
| Debtor. | )   Chapter 13 |

## MEMORANDUM OPINION

James E. Zigmont objects to confirmation of the proposed Chapter 13 plan of Beverly Diane Bland (the "Debtor") on the grounds that neither her petition nor her plan is filed in good faith.

Because the court finds that the Debtor filed her petition in bad faith, the court will sustain Zigmont's objection and will dismiss the Debtor's bankruptcy petition.

## I.  BACKGROUND

The Debtor was the 100% shareholder of The Galley, Inc., which was both a restaurant and a video lottery parlor.  In June 2003, the Debtor borrowed $100,000 from Zigmont.  The loan was to be repaid from the operating income of The Galley.  Zigmont states that the purpose of the loan was to allow the Debtor to purchase new video lottery machines, but the Debtor did not use the money as intended.  In total, the Debtor made 14 monthly installment payments to Zigmont before defaulting on the loan in 2004.  On October 14, 2004, the Debtor and her husband filed a Chapter 7 bankruptcy proceeding in this District.

While preparing her 2004 tax returns, the Debtor asserts that she discovered, for the first time, that her son had been embezzling funds from The Galley.  The Debtor did not reveal this discovery by amending her bankruptcy schedules or by informing the Chapter 7 trustee of the alleged embezzlement.  Meanwhile, in March 2005, Zigmont filed an adversary complaint against the Debtor seeking to except $92,000 in outstanding indebtedness from her discharge under 11 U.S.C. § 523(a)(2), and he also sought to deny the Debtor a discharge under §§ 723(a)(3) and (5).

1

After a trial, the Judge entered a November 29, 2005 order denying the Debtor, and her spouse, a discharge under § 727(a)(5):

> The Court finds, under 11 U.S.C. § 727(a)(5), that Debtors have failed to satisfactorily explain the loss or deficiency of assets. Although Debtors have produced financial records, the Court cannot, from the records produced, determine where substantial amounts of income have gone. The Court realizes that neither debtor is sophisticated in accounting procedures, but the amounts involved are too large to ignore. Accordingly, the Court rules that Debtors' discharge shall be denied unless within thirty (30) days, Debtors convert their case to Chapter 13 and file a Chapter 13 plan which shall pay a reasonable amount to creditors over a period of five (5) years. Should Debtors file a Chapter 13 plan, Debtors payments under the plan shall be based on Debtors having no exemptions.

The basis for this ruling was that the Debtor could not account for the proceeds of the Zigmont loan. Despite her belief that her son had embezzled that money, the Debtor never disclosed that belief to Zigmont or the court in connection with the adversary proceeding. When the Debtor and her husband failed to convert their case, the court entered an order denying discharge on January 12, 2006, and the case was subsequently closed. In May 2006, the Debtor sold The Galley for a net profit of $4,719.

On December 14, 2006, the Debtor filed this Chapter 13 case. As before, the Debtor did not disclose any information on her bankruptcy schedules indicating that her son had purportedly embezzled substantial funds from The Galley, or that she likely had a cause of action against him. At her § 341(a) meeting of creditors, the Debtor disclosed, for the first time, that she believed that her son had embezzled the proceeds of the Zigmont loan. When pressed for information about her son by Zigmont and the Chapter 13 trustee, the Debtor related that he was employed at an airport in Cleveland, but she stated that she did not know where her son was living. Apparently, the Debtor's non-filing spouse had that information, but, despite ample opportunity to do so, the Debtor never divulged the address. Without an address, Zigmont and the Chapter 13 trustee state that they are unable to obtain service of process on the Debtor's son for the purpose of bringing an action against him for his purported embezzlement.

Regarding Zigmont's ability to recover from the Debtor, her counsel stated that she is essentially judgment proof. The Debtor no longer works due to a professed medical condition. Her creditors (apart from the existing cause of action against the Debtor's son) would not receive

anything in a Chapter 7 proceeding; thus, the Debtor asserts that her creditors would fare better in this Chapter 13 proceeding. The Debtor's proposed Chapter 13 plan requires her to make payments of $50 a month for 60 months. Those payments are being funded by the Debtor's non-filing spouse.

## II. DISCUSSION

Zigmont asserts that the Debtor has not filed her bankruptcy petition in good faith on the grounds that the Debtor is attempting to receive a discharge of her obligation to him while not cooperating with him or the Chapter 13 trustee in locating her son to bring a cause of action against him for arising out of his purported embezzlement. The Chapter 13 trustee supports Zigmont's objection.

At least three sections of the Bankruptcy Code allow a court to dismiss a Chapter 13 bankruptcy petition when the court finds that it is filed with a lack of good faith. First, 11 U.S.C. § 105(a) grants the bankruptcy court the inherent equitable authority to dismiss a bankruptcy petition for lack of good faith. *Marrama v. Citizens Bank*, 127 S. Ct. 1105, 1111 (2007). Second, § 1307(c) allows for the dismissal of a Chapter 13 bankruptcy for "cause," which includes the lack of good faith. *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 148 (4th Cir. 1996). Third, § 1325(a)(7) explicitly requires that a Chapter 13 plan be filed in good faith as a condition to confirmation.

The test for the varying "good faith" standards in §§ 105(a), 1307(c), and 1325(a)(7) are extra-statutory, and are articulated differently depending on the context in which the test is applied. For example, in *Marrama*, 127 S. Ct. at 1111-12, the Supreme Court stated that, under § 105(a), a bankruptcy judge should take "any action necessary or appropriate" to prevent an abuse of process "in response to fraudulent conduct by the atypical litigant."

Under 11 U.S.C. § 1307(c), a court's determination to dismiss a petition as being filed with a lack of good faith "is a broad inquiry focusing on the fairness involved in the initiation of Chapter 13 bankruptcy proceedings." *In re Love*, 957 F.2d 1350, 1360 (7th Cir. 1992) ("[G]ood faith under Section 1307(c) should be determined by looking to the totality of circumstances."). Factors that the *Love* court considered when making a § 1307(c) good faith determination included: "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after

3

the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Id.* at 1357.

Finally, § 1325(a)(7) was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8. In discussing § 1325(a)(7) in *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 283 (4th Cir. 2008), the court indicated that the "proper good faith inquiry is 'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan.'" (citing *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982) (analyzing whether a plan was filed in good faith under § 1325(a)(3) of the Bankruptcy Code)). Development of a body of case law under § 1325(a)(7) is still nascent, and it remains to be seen whether the "good faith" requirement in § 1325(a)(7) will be any different from the standards employed by the courts under §§ 105(a) and 1307(c).

In this case, the Debtor has shown herself to be the atypical litigant who is abusing the bankruptcy system, and is thereby violating the good faith requirements in §§ 105(a), 1307(c), and 1327(a)(7). This is a simple case of a debtor attempting to gain the advantages of bankruptcy while not complying with its burdens.

When a debtor files bankruptcy, "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the debtor's bankruptcy estate. 11 U.S.C. § 541(a)(1). This includes any cause of action that a debtor might have against third parties. *E.g.*, *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207-08 (5th Cir. 1999) (stating that debtors have "an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.") (emphasis in original). In complying with the debtor's affirmative disclosure duties, the debtor is expected to answer questions of the Chapter 13 trustee and interested creditors about the nature and extent of the debtor's assets, and the debtor is statutorily prohibited from causing unreasonable delay that is prejudicial to the debtor's creditors. 11 U.S.C. § 1307(c)(1). It is the debtor's obligation to disclose: "Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987).

Here, the Debtor failed to disclose the known cause of action against her son on Schedule

4

B of her 2006 bankruptcy petition.[1]  Also, even after confessing to her son's alleged embezzlement at her meeting of creditors, she refused to provide an address for her son for the service of process, or to otherwise cooperate disclosing information that may lead to the successful prosecution of a lawsuit against him.  In this regard, the Debtor has exhibited recalcitrance and evasiveness.  The Debtor's professed ignorance of her son's address, and her statement that she did not know it but her non-filing spouse did, are too outrageous to be credible.  While the court understands a mother's love for her son, and her desire to protect him from harm, that protection comes at a cost.  If the Debtor desires to take advantage of the bankruptcy system, she must be fully prepared to disclose information to her Chapter 13 trustee and interested creditors concerning the existing cause of action against her son for his purported embezzlement.

Concluding that the Debtor has filed her petition with a lack of good faith, the court must determine what remedy is appropriate.  For example, 11 U.S.C. § 1307(c) directs that a "court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate . . . ."  In § 105(a), the court is directed to "issue any order . . . that is necessary to carry out the provisions" of the Bankruptcy Code.  Under § 1325(a)(7), *Collier on Bankruptcy* takes the view that "[b]y providing a specific remedy in section 1325(a)(7) for bad faith filing of the petition, Congress has presumably indicated that denial of confirmation, rather than dismissal, is the appropriate way to prevent such conduct." 8 *Collier on Bankruptcy* ¶ 1325.07A (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008).

In this case, conversion to Chapter 7 would not be in the best interests of the Debtor's creditors because – apart from the potential recovery against the Debtor's son for his alleged embezzlement – the Debtor has no assets.  When Zigmont and the Chapter 13 trustee are already attempting to pursue causes of action against the Debtor's son, no additional advantage would be gained by having a Chapter 7 trustee substituted for the party plaintiff.  Also, the Debtor is voluntarily proposing to repay her creditors $50 a month in Chapter 13.  Her creditors would not be entitled to that amount in a Chapter 7 proceeding.  In short, the Debtor's creditors are better off

---

[1] Although the Debtor's son allegedly embezzled funds from The Galley, Inc., and not the Debtor, The Galley, Inc., is no longer operating.  As its 100% shareholder, the Debtor would be entitled to any distribution of assets from The Galley, Inc.

5

should the Debtor remain in Chapter 13 than if the court converted the case to Chapter 7.

Similarly, denial of confirmation is not an appropriate remedy under the circumstances of this case. The Debtor has no income and the $50 monthly plan payment is being funded by the Debtor's non-filing spouse as a periodic gift to the Debtor. Based on the Debtor's alleged medical conditions that keep her from working, it does not seem likely, at this time, that the Debtor could propose a more advantageous plan for the repayment of her debts. Also, hinging confirmation on full disclosure of information regarding the cause of action against the Debtor's son for alleged embezzlement is too little, too late. The Debtor had ample opportunity to disclose that information during the administration of this case, but has refused to comply with her disclosure obligations.

The court believes that the best remedy for the Debtor's lack of good faith in filing her bankruptcy petition is to dismiss her Chapter 13 case. In the meantime, Zigmont is free to pursue his state law remedies against the Debtor and her son, and, with the passage of time, the Debtor may gain new employment or obtain additional assets from which she can satisfy creditors' claims. Should the Debtor re-file bankruptcy, however, the court expects the Debtor to cooperate in the full disclosure of her assets.

### III. CONCLUSION

Based on the Debtor's failure to cooperate in the administration of her bankruptcy estate, the court concludes that her case is filed with a lack of good faith and the court will dismiss her case. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.